CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
Hyannis Air Service, Inc. dba Cape Air



**FILED**
DISTRICT COURT OF GUAM
**JUL 2 4 2007**
**MARY L.M. MORAN**
**CLERK OF COURT**

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| TIFFANY ANNE NICHOLSON,<br><br>    Plaintiff,<br><br>vs.<br><br>HYANNIS AIR SERVICE, INC.<br>dba CAPE AIR,<br><br>    Defendant. | CIVIL CASE NO. CIV06-00027<br><br>**MEMORANDUM IN OPPOSITION TO<br>MOTION FOR PROTECTIVE ORDER;<br>DECLARATION OF LINDA<br>MARKHAM; DECLARATION OF<br>DAVID LEDGER; EXHIBITS A-F;<br>DECLARATION OF SERVICE** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Tiffany Nicholson's Motion for Protective Order disingenuously[1] asks the Court

---

[1] The lack of candor in bringing the Motion stems in large part from Opposing Counsel's specific knowledge that the intended deponent, Russell Price, is an ex-employee of Cape Air and that Cape Air's leave of absence (LOA) policy does nothing to alter this. Instead, opposing Counsel knows the LOA benefit simply gives Mr. Price the option to re-apply for employment with no loss of pilot seniority so long as application for re-employment is made within one year of separation from employment. Indeed, Cape Air's Leave of Absence Policy was previously produced in discovery as document #H509. The policy as produced points out the following:

    1. An employee may take LOA without pay.

    2. The LOA employee must surrender Company ID, airport ID, General Operating Manual, station keys, and any other company property.

    3. The LOA employee may not participate in any company benefits and the employee's accrual of benefits is frozen.

*ORIGINAL*

to compel a non-party witness to take several days of unauthorized time off work and travel thousands of miles to attend a one-day deposition in Guam. On its face, this is a contradiction of terms and in any case not provided for by any civil or local rule. Under Federal Rule of Civil Procedure 45, the Court has no power to compel the attendance of a non-party witness, who resides and works in Ireland, to travel to Guam to appear for a deposition. The Motion should be denied, and sanctions should be imposed on Plaintiff's counsel's for his failure to follow the Federal Rules of Civil Procedure and Local Rules' requirements that the parties meet and confer prior to submitting a discovery dispute to the Court.

## II. BACKGROUND

### 1. Russell Price's Current Status.

Russell Price is an ex-employee of Cape Air. When he was employed his job was Pacific Regional Administrator for Defendant Hyannis Air Service, Inc.'s ("Cape Air") operations in the Pacific Region. Markham Decl., ¶ 4. He is also a pilot, and acted as a check airman[2] for Cape Air.

On January 28, 2007 Mr. Price terminated his employment with Cape Air and elected to avail himself of Cape Air's Leave of Absence benefit. Markham Decl., ¶ 4. His election of the LOA benefit offered to ex-employees is the only present link Mr. Price has with Cape Air. He has no present managerial capacity with Cape Air. Markham Decl., ¶ 5.

Cape Air's LOA policy allows a pilot the opportunity to separate from employment yet

---

4. The LOA employee's return to employment is conditioned upon the need for the position. In other words, **reemployment is not guaranteed**.

These factors, among others in the handbook produced to Plaintiff, demonstrate beyond any doubt that Cape Air has no employment relationship with Mr. Price and thus no right to insist on his appearance at trial or that he appear in Guam for Defendant's deposition. In short, as discussed in this Memorandum in Opposition, LOA status is merely a preservation of seniority for one year after separation from employment.

[2] A check airman is qualified to check and evaluate the in-flight skills, safety, and proficiency of other pilots, including, as in this case, Plaintiff.

4815-8053-0945.2.056785-00005

retain seniority for a period not to exceed one year. Markham Decl., ¶¶ 2, 3, 6, Exs. A, B. During that year, the pilot has no obligation to Cape Air nor does Cape Air have any obligation to the pilot other than to freeze seniority for one year. Rather, the pilot may pursue employment elsewhere, such as to fly with another airline. Markham Decl., ¶ 6. A pilot electing the LOA benefit must return their Company ID, airport ID, General Operating Manual, station keys, and any other company property. Exs. A, B.

Cape Air's LOA policy is intended to leave open the possibility for pilots to re-apply for employment with the company with no loss of seniority for one year post-separation, as the recruitment of pilots is not an easy task throughout the airline industry. Markham Decl., ¶ 7. In essence, if a pilot elects LOA and is able to return to employment with Cape Air within one year he or she may do so without loss of seniority. Markham Decl., ¶ 7. In other words, if Cape Air re-hires the pilot he or she does not have to "start over" to accrue seniority. Seniority represents a large incentive for pilots, because it is the sole factor that determines a pilot's ability to bid to work on a particular flight or series of flights. Markham Decl., ¶ 8. For example, senior pilots may bid for daytime flights whereas less senior pilots may be flying at odd and undesirable hours of the night.

However, LOA status *does not* guarantee re-employment. Markham Decl., ¶ 10. Rather, the ability to return to work for Cape Air is entirely dependent on Cape's Air's then-current staffing needs. Markham Decl., ¶ 10, Exs. A, B. If Cape Air does not have any positions available, the pilot may re-apply when a position opens up. Markham Decl., ¶ 11, Ex. A. Therefore, Mr. Price is not guaranteed re-employment should he choose to seek re-employment with Cape Air. Markham Decl., ¶ 12.[3]

---

[3] Again, Plaintiff and her counsel were made aware of the LOA policy, as Exhibit B was produced in discovery. Plaintiff's Counsel's self-serving representations that LOA status means that Mr. Price is still employed by Cape Air

4815-8053-0945.2 056785-00005
Case 1:06-cv-00027     Document 27     Filed 07/24/2007     Page 3 of 40

Mr. Price has informed Cape Air that he is currently employed as an airline pilot in Ireland, and is a resident of Ireland. Markham Decl., ¶ 13. However, Cape Air has no authority over Mr. Price's current employment situation in Ireland. Markham Decl., ¶ 14. Mr. Price is not required to "check in" with Cape Air or otherwise inform Cape Air of his present employment status or his whereabouts. Markham Decl., ¶ 14. As with any other Cape Air pilot who elected the LOA benefit, if Mr. Price chooses not to seek re-employment with Cape Air prior to one year since he resigned, he is not required to notify Cape Air of his decision and his LOA benefit simply lapses. Markham Decl., ¶ 14.

**Furthermore, Cape Air does not have the authority to compel Mr. Price to attend the trial in this case.** Markham Decl., ¶ 15. Moreover, as the Court is well aware, the uncertainty of when civil cases actually get to trial complicate the matter greatly for Cape Air because even if Mr. Price were to agree now to attend the trial, he may be unable to do so if the eventual trial date conflicts with his flight schedule for his present employer, or if any other obstacle to his appearance arises between now and the time of trial. As Mr. Price will testify at deposition, his flight schedule is set weeks in advance and once set is exceedingly difficult to alter due to other pilots being scheduled off and thus unable to fill a vacancy on a flight. In other words, relief pilots are the exception not the rule. Furthermore, the present trial date may not now be taken into consideration by Mr. Price because he is unable to bid for and set his work schedule that far in advance. Absent a deposition to preserve testimony, it is apparent that Cape Air is at high risk of not having testimony from a *key* witness at the time of trial. The purpose of the deposition is not discovery but rather to preserve Mr. Price's testimony in the event he cannot

---

is disingenuous and completely contrary to the evidence placed in his hands. This same information was repeatedly emphasized to Plaintiff's Counsel in communications prior to and subsequent to the filing of the Motion, since Plaintiff fully failed to meet and confer with Defendant on this particular issue.

attend the trial. Ledger Decl., ¶ 11.[4]

## 2. Russell Price's Involvement in this Case and his Status as a Key Witness are Unquestionably Paramount.

Plaintiff has made several accusations against Defendant many of which directly involve Mr. Price. This case pertains to Plaintiff's discipline as a result of deficient Crew Resource Management (CRM) skills, which consist of communication and interpersonal skills with other pilots in the cockpit. If CRM is lacking, flight and passenger safety is called into question. In other words, this case is not just about the inability to talk nice to co-workers.

To remedy her deficient CRM skills, a team of managers decided to retrain Plaintiff on CRM, skills which she first studied in ground schools training just two to three months earlier, simulator training, and initial experience operating the aircraft. That manager team consisted of **Russell Price**, David O'Connor, Cape Air's Director of Training, and Stephen Phillips, Cape Air's Chief Pilot. The manager put in charge of executing the CRM retraining was **Russell Price.**

Mr. Price instituted the retraining which involved Plaintiff's observations of other working pilots who exhibited excellent CRM, and flying with other pilots, including himself. Mr. Price's eye-witness observations and personal evaluation of these retraining opportunities,

---

[4] We reveal another reason why the motion for protective order lacks the candor required of Counsel. As a reason to avoid the deposition, opposing Counsel contends his inability to attend and cross examine by telephone is due to the fact that the deposition would necessarily involve the use of dozens and dozens of deposition exhibits which would be clumsy to deal with during a telephone deposition. That is more than a little untrue. Aside from Counsel's questionable skill to predict how another lawyer will conduct a deposition, the fact of the matter is that there will be few exhibits, and those that are used would be pre-marked and provided to opposing Counsel before the deposition. Furthermore, since this is not a discovery deposition, cross examination would be limited to scope of direct examination. If opposing counsel refuses to attend by telephone, it is of his own making and should not be attributed to Cape Air's counsel's method of conducting the deposition or the number of exhibits which will be used. Opposing counsel contends he is unable to attend by phone because he must "assess witness credibility." Again, one must conclude on the facts that that is more than a little untrue. First, if opposing counsel were truly concerned over and wished to test "witness credibility" he could have arranged to take Mr. Price's discovery deposition to prepare for cross examination at trial, as such arrangements were offered by undersigned counsel. Second, as the deposition will be video taped, the Court and jury will have the opportunity to see Mr. Price testify and evaluate his credibility as a witness as it is solely their province to do so.

which spanned four days, were submitted to Defendant's Chief Pilot, the Director of Operations, and the Director of Human Resources. This three-person panel then disciplined Plaintiff based on numerous factors, including but not limited to **Mr. Price's observations.**

If there is anything about this case which is self-evident, it is that Mr. Price's testimony is absolutely crucial for the Court and jury's analysis and decision in that Plaintiff claims her discipline was due to discriminatory and non-legitimate business reasons. Again, the purpose of the deposition is to ensure that this crucial evidence is not lost due to the inability of Mr. Price to attend the trial in person.[5]

### 3. The Chronology of Russell Price's Involvement in this Litigation.

Mr. Price ended his employment with Cape Air on January 28, 2007. Markham Decl., ¶ 4. At the time Cape Air served its Initial Disclosures, February 16, 2007, Cape Air was unaware of Mr. Price's new address, and therefore listed its own address. However, upon finding out Mr. Price's email address, Cape Air supplemented its Initial Disclosures, and disclosed Mr. Price's email address. Just as Cape Air has no authority over Mr. Price's employment, residence, or ability to appear at trial, Cape Air has no control over whether or not Mr. Price chooses to communicate informally with Plaintiff's counsel.

Mr. Price has been asked, and has agreed, to attend a deposition in London on August 7, 2007. Ex. F. Mr. Price will be prepped for, and attend, the deposition during his days two off from work. Ledger Decl., ¶ 11. Cape Air would reimburse Mr. Price for his expenses to travel from his residence in Ireland to appear in London and for one night hotel accommodations.

Counsel for Cape Air is familiar and experienced with making convenient arrangements for depositions in London, and for that reason chose London as the deposition location. Ledger

---

[5] On the other hand, knowing pretty much what Mr. Price will say, it is understandable why opposing counsel is unabashedly taking desperate and spurious steps to avoid the trial preservation deposition in hopes that Mr. Price will in fact be unavailable at the eventual time of trial.

Decl., ¶ 13, Ex. F. It is unknown whether Mr. Price will be available at a later date to give his deposition, but in any case it will be difficult to arrange given Mr. Price's employment situation, which requires him to reside in Ireland to work. As it turned out, after much communication August 7, 2007 was the date on which (1) Mr. Price was available; (2) the court reporter was available; (3) the videographer was available; (4) the conference room was available; and (5) Cape Air counsel was available. It should be noted that opposing counsel was given almost two (2) months notice of the date and location for the deposition, yet delayed in filing the instant Motion such that the Court is unable to rule on it prior to August 7, 2007, thus ordering that all previously made arrangements and the deposition be cancelled and held in abeyance.

## III. LEGAL DISCUSSION

### A. PRICE IS A NON-PARTY WITNESS WHOSE ATTENDANCE AT A DEPOSITION IS LIMITED BY RULE 45.

#### 1. Standards for the Production of Witnesses for Depositions.

Plaintiff intentionally misleads the Court by trying to cast the wrong light on the core issue. In particular, by her statement that the general rule is that oral examination is held in the district where the action is pending. *See* Mot. at 4. **This is hardly the general rule.** Rather, there are divergent rules depending on the deponent.

The deposition of a *party* may be noticed wherever the deposing party designates, subject always to the Court's power to issue a protective order. *Philadelphia Indemnity Ins. v. Fed. Ins. Co.*, 215 F.R.D. 492, 495 (E.D. Pa. 2003). Normally, even a party's deposition is taken in *the district where he or she resides or is employed or has a place of business. Grey v. Continental Marketing Assocs.*, 315 F. Supp. 826, 832 (N.D. Ga. 1970).

Compelling the appearance of *a non-party* such as Mr. Price at a deposition, however, is an entirely different matter subject to the strict limits of Rule 45. Only a subpoena can assurance

4815-8053-0945.2.056785-00005

the appearance of a non-party witness. Fed. R. Civ. P. 45. A subpoena for a non-party witness may be served on a witness residing outside of the district where the action is pending, as long as service is effected within 100 miles of where the deposition will be conducted. Fed. R. Civ. P. 45(b)(2). But a subpoena can be quashed if it requires a party to appear for a deposition more than 100 miles from his residence, or regular place of business or employment. Fed. R. Civ. P. 45(c)(3)(A)(ii). In other words, the Court's power to compel the appearance of a non-party witness is limited by Rule 45 to causing the witness to travel no more than 100 miles for the deposition. A non-party witness will rarely be required to appear at a location greatly in excess of the 100-mile limit. *Comm-Tract Corp. v. Northern Telecom, Inc.*, 168 F.R.D. 4, 7 (D. Mass. 1996). Also, parties must take reasonable steps to avoid imposing an undue burden or expense on a person subject to a subpoena.[6] Fed. R. Civ. P. 45(c). If they breach this duty, the court may impose sanctions that includes reimbursement for lost earnings and attorneys fees. Fed. R. Civ. P. 45(c)(1).

## 2.    Russell Price is a Non-Party.

Russell Price is not named as a defendant in this case. Moreover, it is undisputed that he does not have the present capacity as an officer, director, or managing agent at Cape Air, as he has absolutely no discretion over Cape Air's corporate activities, nor did he ever. At present he is not even employed by Cape Air. Rather he is employed by an Ireland-based airline and has no obligation to advise Cape Air of his whereabouts or even his employment at another airline. Moreover, even if Mr. Price later decides to seek re-employment at Cape Air, his re-hiring is conditioned upon whether or not Cape Air has a job open for him. Mr. Price is the paradigm non-party witness and it is difficult to imagine a more clear-cut example.

---

[6] In contrast to Plaintiff's misguided if not outright false representations, when it comes to the location of a deposition, the concern is not over the undue burden borne by a party, but the undue burden and expense borne by a witness. Fed. R. Civ. P. 45(c).

4815-8053-0945 2.056785-00005

Case 1:06-cv-00027     Document 27     Filed 07/24/2007     Page 8 of 40

This was Mr. Price's status in May 2007, when Defendant made available ten Cape Air managers and representatives in Hyannis, Massachusetts, and Fort Lauderdale, Florida, for their depositions. In May 2007, Mr. Price was not employed by Cape Air. He was instead living and working abroad in the U.K. and Cape Air had absolutely no authority over his whereabouts or movements. Cape Air therefore had no responsibility to produce him for a "noticed" deposition in Hyannis especially when, in fact, the "notice" of deposition was ineffective from the get-go as opposing counsel was made aware of Mr. Price's independent status. [7]

Cape Air's lack of obligation to produce Mr. Price, a former employee, is especially clear when Cape Air acknowledged its obligation to produce ten of its employees and managers, *including its President.* Had Cape Air had any authority to produce Mr. Price for a deposition, it would have done so just as it did for its ten employees who were noticed for depositions. Cape Air even went out of its way to make available Nehal Zaidi, a pilot and non-managerial agent working out of Puerto Rico, and John Kappeyne, a pilot and non-managerial agent working out of Naples, Florida, to appear for depositions in Fort Lauderdale, Florida, *at Cape Air's expense.* Cape Air has more than bent over backwards to be cooperative with Plaintiff, which Plaintiff has not reciprocated prior to filing her Motion. See discussion at § IV, *infra.*

However, when it comes to Russell Price, Cape Air clearly has no authority, nor obligation, to produce him for a deposition, or even as a witness at trial. As past practice shows, if it did have the authority and obligation, Cape Air would have satisfied its obligation to produce him.

Accordingly, the civil rules applicable to a non-party witness applies with respect to the deposition of Mr. Price.

---

[7] It would seem that the motion for protective order is based entirely on opposing counsel's unabashed contention of "I say it is, therefore it is", yet this is hardly sufficient justification to sustain the motion.

4815-8053-0945.2.056785-00005

3.  The Court's Power to Compel Russell Price's Attendance for Deposition is
    Limited by Rule 45.

Unless a non-party witness agrees otherwise, he cannot be compelled to attend a deposition absent a subpoena. Fed. R. Civ. P. 45. Under Rule 45, if Mr. Price did not agree to a time and place for his deposition, the only way *either party* (and thus the Court) could compel his attendance is by obtaining a subpoena under Rule 45 and 28 U.S.C. § 1783. For foreign depositions, this requires Cape Air (or the Plaintiff) to obtain Letters Rogatory from this Court and in addition a subsequent order from a judicial authority in the United Kingdom compelling Mr. Price's attendance.[8] Fed. R. Civ. P. 45(b)(2); 28 U.S.C. § 1783. Mr. Price's willingness to travel to London at Cape Air's expense alleviates the extraordinary and expensive subpoena process; however, it hardly signifies Mr. Price's willingness to make himself available to travel the approximately 10,000 miles to Guam.[9]

Moreover, Rule 45's 100-mile limit restricts the taking of his deposition to the United Kingdom. As counsel is experienced with scheduling depositions in London, and Mr. Price is willing to travel to London, London is the ideal place to take Mr. Price's deposition. Ledger Decl., ¶ 12. Mr. Price has indicated that at present his flight schedule and limited number of consecutive days off make it exceedingly difficult for him to travel very far from the United Kingdom to attend a deposition or even the trial in Guam. Ledger Decl., ¶ 11.

It would therefore be an unprecedented, and unauthorized, burden to require Mr. Price to travel to Guam for the convenience of Plaintiff and her counsel when it is not what he wants to do and would clearly interfere with his employment by causing Mr. Price to travel thousands of

---

[8] Let us not be so naïve as to think a local court in Ireland would rule that to give a deposition Mr. Price must travel to Guam for the convenience of the Plaintiff and her counsel.

[9] In fact, at first Mr. Price expressed a preference to give his deposition in Ireland. Counsel for Cape Air requested Mr. Price to travel the short distance from Ireland to London because Guam-London-Guam travel is less expensive and burdensome than Guam-Ireland-Guam travel, thus making the deposition easier on both defense and plaintiff's counsel.

4815-8053-0945.2.056785-00005

miles and miss work. It would be in violation of the plain language of Rule 45 and 28 U.S.C. 1783 to require Mr. Price to travel to Guam for a one-day deposition so as to avoid inconvenience to Plaintiff and her counsel. The clear and only legally justified remedy is to permit his deposition to be taken near his residence, at a location convenient for him, or a location of his own choosing.

It should also be noted that trial preservation depositions are rather routine in the District of Guam, where parties are used to making accommodations for off-island and remotely located witnesses. Cape Air has the right to take the deposition of Mr. Price for the defense of its case at trial.

## B. PLAINTIFF CAN APPEAR AT THE DEPOSITION BY TELEPHONE.

If they are unable or unwilling to travel to London, Plaintiff and her counsel have been invited to participate in the deposition by telephone. Just like off-island depositions, telephonic attendance at off-island depositions by Guam-based counsel is nothing new or special. Instead, it is rather routine.[10] Opposing counsel's misguided remarks concerning "too numerous deposition exhibits" and assessment of "witness credibility" have been highlighted and discredited above. Furthermore, Plaintiff herself is sufficiently associated and familiar with Mr. Price so as to be quite capable of sharing her "credibility" assessment with her counsel. Plaintiff cannot claim any prejudice because technology permits her and her counsel to telephonically attend Mr. Price's deposition.

## IV. **SANCTIONS ARE WARRANTED**

Cape Air both renews its Motion to Strike Plaintiff's Motion for Protective Order, filed on July 9, 2007, and seeks sanctions herein for Plaintiff's failure to abide by the Court's Local Rules

---

[10] On the other hand, *taking* the deposition by phone is not an option in that one full day of in-person preparation will be needed to review documents, exhibits, and the facts of the case, and to generally prepare the witness for the process and testimony to be solicited.

4815-8053-0945.2.056785-00005

and the Federal Rules of Civil Procedure. The Motion to Strike pointed out two deficiencies in the Motion for Protective Order. First, Plaintiff did not contact Cape Air to file a LR 37.1 Stipulation. Second, Plaintiff failed to certify to the Court that the parties in good faith conferred or attempted to confer to resolve the dispute prior to submitting the dispute to the Court. Fed. R. Civ. P. 26(c). *See also* Fed. R. Civ. P. 37(a)(2)(B). Plaintiff's only attempt at a certification is a statement in her Motion that "despite communications on the issue, as required by Local Rule 37.1 of the FRCP,[11] no resolution of the dispute has been reached." Mot. at 4 (footnote added).

The purpose behind the meet and confer is obviously to allow the parties to reach a discovery dispute resolution without engaging the Court's resources. The meet and confer, the certification that a meet and confer was held, and the threat of sanctions on the losing party all compel a movant to be diligent in meeting the requirements of the discovery rules.

However, here, counsel for Plaintiff still failed to meet and confer on this issue, making the submission of this dispute before the Court premature. After Cape Air served its Notice of Deposition on Plaintiff, almost two months before the deposition on June 15, 2007, Cape Air received a letter from Plaintiff stating her "formal objections". The letter made no mention of a meet and confer as required under Rule 26(c). *See* Ex. C. Counsel for Cape Air responded to the formal objections. Ledger Decl., ¶¶ 7-9, Exs. D, E. Counsel for Cape Air was the one who took the initiative to hold a meet and confer once it was advised that Plaintiff was filing her motion. Ledger Decl., ¶ 8. Ex. E.

Clearly, Plaintiff's counsel's efforts were insufficient. "Sending a letter to the opposing party demanding compliance with a discovery request is not what this Court regards as an earnest attempt to 'meet and confer' on the issues. Rather, a live exchange of ideas and opinions

---

[11] This is an obvious misstatement, because LR 37.1 is a District Court of Guam Local Rule, whereas the Federal Rules of Civil Procedure contain their own requirements for parties to meet and confer. *See* Fed. R. Civ. P. 26 (c) (for motions for protective orders) and 37(a)(2)(B) (for other discovery motions).

4815-8053-0945 2 056785-00005

is required." *Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995). There was never a live exchange of ideas and opinions. Rather, Plaintiff's counsel wrote only one letter stating objections before he filed his Motion for Protective Order, *without* a LR 37.1 stipulation or a Rule 26(c) certification. [12]

Sanctions are warranted for counsel's failure to satisfy the meet and confer requirements, and for his failure to file a LR 37.1 Stipulation or a Rule 26(c) certification. Fed. R. Civ. P. 26(c), 37(a)(4). Under Rule 37 if a discovery motion is denied, the Court may order that the moving party or the attorney filing the motion pay the party who opposed the motion "the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(4)(B). Here, there is a complete failure of any justification for the motion as opposing counsel is knowingly asking the Court to act contrary to Rule 45 and to do something the Court lacks any authority to do.

Sanctions should be awarded in the amount of fees and costs incurred to respond to this discovery dispute. Cape Air is willing to provide the amount of such fees and costs upon the Court's request.

## V. CONCLUSION

Simply put, Russell Price cannot under Rule 45 and 28 U.S.C. § 1783 be compelled to attend a deposition in Guam. Plaintiff tries to avoid this inescapable conclusion by disguising the motion as one where the Court may exert authority over undersigned counsel's selection of the location for the deposition, but not counsel's right to take the deposition. The disguise is, however, ineffective to hide the real issue and the rules of decision because it is unquestionably

---

[12] It should also be noted that undersigned counsel sent opposing counsel multiple e-mails explaining why Mr. Price is not an employee of Cape Air. No substantive rebuttal or response was ever provided; rather, all that was stated was "we disagree."

Defendant's right to take a trial preservation deposition of a non-resident witness [13] and the location for this deposition is dictated not by the convenience of counsel but rather by where the witness lives and works and the civil rules and statutes governing such depositions. The misguided request that the Court order the location of Mr. Price's deposition in violation of such rules and statutes is not based on any law or rule but rather on the contention that Plaintiff should not be inconvenienced to attend. The only appropriate, and legal, place for Mr. Price's deposition is near his residence in Ireland. The Motion for Protective Order should be denied, and Cape Air should be allowed to proceed with its deposition of Mr. Price in Ireland, or in London if Mr. Price is still agreeable to appearing there.

Moreover, counsel for Plaintiff blatantly disregarded Federal Rule of Civil Procedure 26's good faith certification and meet and confer requirements, as well as LR 37.1's stipulation requirements. For his knowing disregard of the Court's Rules, Plaintiff's counsel should be sanctioned.

DATED: Hagåtña, Guam, July 24, 2007.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Defendant
Hyannis Air Service, Inc. dba Cape Air

---

[13] L.R. 30.1(c), video depositions, clearly is designed to facilitate preservation of witness testimony for use at trial.

Case 1:06-cv-00027    Document 27    Filed 07/24/2007    Page 14 of 40

## DECLARATION OF LINDA MARKHAM

I, LINDA MARKHAM, declare under penalty of perjury that the following statements are true and correct:

1. I am the Vice President of Human Resources for Hyannis Air Service, Inc. dba Cape Air ("Cape Air").

2. Attached hereto as Exhibit A is a true and correct copy of pertinent pages of Cape Air's Flight Operations Manual, which discusses Cape Air's Leave of Absence ("LOA") policy.

3. Attached hereto as Exhibit B is a true and correct copy of pertinent pages of Cape Air's Employee Handbook, which also discusses Cape Air's LOA policy.

4. Russell Price is the former Pacific Regional Administrator for Cape Air's operations in the Pacific Region, and also acted in the capacity as a pilot for Cape Air. Mr. Price terminated his employment with Cape Air on _1/28/07_, and availed himself of Cape Air's Leave of Absence option, his only remaining connection with Cape Air.

5. Russell Price holds no present managerial capacity with Cape Air.

6. Cape Air's LOA policy allows a pilot to take leave for no greater than one full year. During that year, the pilot has the opportunity to fly with another airline, or pursue employment elsewhere.

7. Cape Air's LOA policy is intended to leave open the possibility for pilots to return to employment with the company, if they so choose, as the recruitment of pilots is not an easy task throughout the airline industry. In essence, if a pilot is on LOA and chooses to return to service, they may do so without affecting their seniority status.

8. Seniority is the sole factor that determines a person's ability to bid to work

4815-8053-0945.1.056785-00005

on a particular flight or series of flights. Thus, seniority represents a large incentive for pilots.

9.    Cape Air's LOA policy allows seniority position to be frozen, and therefore retains the seniority incentive for pilots who decide to pursue employment elsewhere.

10.    However, LOA status does not guarantee re-employment. Rather, the ability to return to duty is based on Cape's Air's then-current staffing situation. Ex. A; Ex. B.

11.    If Cape Air does not have any positions available, the pilot must wait until a position opens up. Ex. A.

12.    As an LOA status pilot, therefore, Mr. Price is not guaranteed re-employment should he choose to be re-employed with Cape Air.

13.    Upon information and belief, Russell Price is employed by an airline in Ireland and is a resident of Ireland. However, Cape Air does not keep track of Mr. Price's whereabouts, or any LOA pilot's whereabouts.

14.    Cape Air has no authority over Mr. Price's current employment situation in Ireland. Mr. Price is not required to check in with Cape Air or otherwise inform Cape Air of his employment status or his whereabouts. As with any pilot on LOA status, if Mr. Price chooses not to return to Cape Air prior to the expiration of the one-year LOA, he is not required to notify Cape Air of his decision. He is not required to maintain any communications with Cape Air.

15.    Cape Air does not have the authority to compel Mr. Price to attend the trial in this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true, correct and complete.

EXECUTED: July $14$, 2007.

LINDA MARKHARM
Vice President of Human Resources
Hyannis Air Service, Inc. dba Cape Air

4815-8053-0945.1.056785-00005

## DECLARATION OF DAVID LEDGER

I, DAVID LEDGER, declare under penalty of perjury that the following statements are true and correct:

1. I have personal knowledge of the facts stated in this declaration except as otherwise indicated.

2. I would testify competently as to these facts if called by the Court.

3. I am licensed to practice law before all courts in Guam.

4. I am an attorney for Defendant Hyannis Air Service, Inc. dba Cape Air.

5. On June 18, 2007, I received a letter from Mr. Torres stating Plaintiff's "formal objections" to the Notice of Deposition for Russell Price. Attached hereto as Exhibit C is a true and correct copy of Mr. Torres' letter.

6. On that same day I responded to Plaintiff's formal objections. Attached hereto as Exhibit D is a true and correct copy of my response.

7. On July 2, 2007, Mr. Torres called my office but I was out of the office preparing to go off-island on July 3, 2007. Mr. Torres left a message with my secretary stating that he will be filing a Motion for Protective Order on Mr. Price's noticed deposition and that he was seeking an agreement to a hearing date.

8. Later during the day on July 2, 2007 I received the message from my secretary that Mr. Torres had called. I took the initiative to contact Mr. Torres regarding a meet and confer in the hopes of having a live exchange of ideas before Mr. Torres filed his motion. In particular, I wanted to make sure Mr. Torres understood that Mr. Price was not employed by Cape Air and that he lived and worked in Ireland for another airline.

9. On July 3, 2007, my co-counsel Elyze McDonald responded by email to Mr. Torres' call and stated that Mr. Torres was filing a Motion that was not in compliance with

LR 37.1, which requires a stipulation to be filed along with a discovery motion. Attached hereto as Exhibit E is a true and correct copy of a chain of emails showing the correspondence between myself, Mr. Torres, and Ms. McDonald.

10.    In arranging this deposition with Mr. Price, Mr. Price has indicated that even if Cape Air were willing to pay his way to Guam, he cannot take off from work for a long enough period of time for a deposition in Guam because of the demands of his new employment as a pilot for an Ireland-based airline. However, Mr. Price agreed to appear in Ireland, without subpoena, for his deposition. Mr. Price then agreed to travel from Ireland to London for his deposition during a time when he had been able to arrange two consecutive days off from work. One day would be spent preparing for the testimony and one day would be spent taking the deposition, allowing Mr. Price sufficient time to travel back to Ireland the same day so he could return to work the next day, August 8, 2007. Mr. Price agreed to travel from Ireland to London at my request so as to ease the travel burden on counsel, i.e., allowing Guam counsel to make the more convenient and less costly Guam-London-Guam flight as opposed to Guam-Ireland-Guam.

11.    The purpose of the deposition is not for discovery but to preserve Mr. Price's testimony for trial. Mr. Price further indicated that at present his availability to appear in person at trial is unknown and in any event will depend upon a number of factors beyond his or my control.

12.    I have taken depositions in London previously in other cases. I am familiar with the court reporters and videographers in London and making arrangements for depositions for cases pending in the United States.

13.    Attached hereto as Exhibit F is a true and correct copy of the Notice of Deposition for Russell Price. The location stated for the deposition is convenient to all manner of London public transportation and similarly convenient (walking distance) to several medium

priced London hotels.

I declare under penalty of perjury under the laws of the United States that the foregoing is true, correct and complete.

EXECUTED: Hagåtña, Guam, July 24, 2007.

DAVID LEDGER
Attorneys for Defendant
Hyannis Air Service, Inc. dba Cape Air

# EXHIBIT A

## Section 11: Leave of Absence (LOA) / Company Offered Leave of Absence (COLA) / Line Sharing

### A. Leave of Absence (LOA)

1. Eligibility

    a) One year of continuous full time, year round employment

    b) Be in good standing with the Company and Management and continue to be in good standing while on the LOA.

    c) Give at least a two week notice of request.

2. Non-Eligible

    a) All flight crewmember bases - Requesting an LOA commencing between the time period March 15 and September 15.

3. Other

    a) Any flight crewmember who participates in this program may be granted an LOA for a period of time, not to exceed one year. The Company always reserves the final right to grant or deny an LOA, based on present staffing requirements at the time of the request. While on leave, the participants seniority number and benefit accrual freezes where it was when active employment ended. The seniority list would move around this frozen number for up to one year or until the participant elects to return to service. Company ID's must be returned for all flight crewmembers on an LOA.

    b) A person who returns from an LOA per this section will not be eligible for another LOA until they have been reemployed by Hyannis Air Service, Inc. for a period of one year starting from the date of their return. In the event that a crew member on LOA wishes to return to duty but Hyannis Air Service, Inc. does not have duty available the one year will start from the requested date of return.

### A. LOA (cont.)

4. Returning to Duty

a) The details of returning to duty would be based on the current staffing situation as determined by Management at that time. All flight crewmembers upon returning from an LOA will be required to submit to a pre-employment drug test as well as FAA mandated fingerprinting. The employee must give two weeks written notice of intent to return for duty. This written notice must be submitted to the Chief Pilot. If notice of intent to return for duty is given within the one-year time frame of the LOA, but there is no duty available at the time of the notice, the LOA will be extended until such time that duty becomes available. In such an instance, Hyannis Air Service, Inc. will give two weeks notice to an employee for return to duty.

### B. COLA / Line Sharing

1. As long as Cape Air / Nantucket Airlines has more flight crewmembers available for a bid sequence than available lines, the following options may become available:

a) **Company Offered Leave of Absence (COLA).** This will be offered on a seniority basis available only after all lines are filled. A flight crewmember on a COLA would maintain seniority as a line holder and be allowed all travel benefits on Hyannis Air Service, Inc. flights only. A flight crewmember on a COLA would not be eligible for any weekly minimum pay.

b) **Line Sharing.** Any flight crewmembers interested in sharing a line for a bid may do so. This could be done either on a weekly basis or split up for the bid period. The senior flight crewmember would bid the line and the junior flight crewmember would not bid. Crew scheduling must know which flight crewmember would be responsible for covering scheduled days on. Line sharing will only be available if there are more flight crewmembers than lines for the bid period. Flight crewmembers participating in line sharing will not be eligible for any weekly minimum pay.

# EXHIBIT B

**LEAVE OF ABSENCE (LOA)**

The Company, in its discretion, may grant an employee a leave of absence without pay for a definite or indefinite period of time, not to exceed one (1) year.

To be eligible, the employee must: (1) have completed one year of continuous employment as a Full-Time status employee; (2) be in good standing with the Company; and (3) request the LOA in a writing submitted to the employee's manager. If approved, the employee must submit the Company I.D., airport I.D., General Operations Manual (if applicable), station keys, sine-in codes, and any other Company property to his or her manager or supervisor. In addition, the employee must use accrued Paid Time Away From Work (PTAFW) in his or her bank in excess of one-hundred (100) hours as the LOA commences in increments of not less than ten (10) hours per week.

While on leave, the employee may not participate in any Company benefits and the employee's accrual of benefits based on longevity is frozen as of the date of the LOA (e.g. PTAFW does not accrue while on LOA). Employees participating in the Company insurance plan will be provided with information regarding COBRA for the continuation of insurance benefits solely paid by the employee.

Requests for returns from leaves must be submitted in writing at least two (2) weeks before the expiration of the leave to Linda Markham, Director Human Resources, Cape Air/Nantucket Airlines, 660 Barnstable Road, Hyannis, MA  02601. Return to employment is conditioned upon the company's current need for the position requested and the employee's eligibility for such position as determined by current job descriptions and regulatory requirements. Employees returning from leave may be subjected to background checks, fingerprinting, and other requirements that also apply to new-hire employees as described in the section entitled Employment Screening Required by Regulatory Authorities. If notice of intent to return is provided within the timeframe described above, but the Company does not have a position available for which the employee is eligible and qualified, the LOA may be extended for a reasonable period of time not to exceed one (1) year. The determination of this reasonable period of time will be based upon the position sought, the anticipated future needs for employees in this position, the Company's business plan, and the economic and environmental factors in which the Company is currently operating.

Upon return from a LOA under these terms, the employee's benefits and benefit accrual resume. The employee retains his or her original Company date of hire, although internal department seniority based on longevity may be affected by the leave. Additional requirements may apply for flight crew members who should refer to the FOM for more information.

**FURLOUGH/LAYOFF**

If it should become necessary for the Company to reduce employment levels due to economic or unforeseen business conditions, the Company may place employees on furlough status. While on furlough, the employee may not participate in most Company benefits, depending upon the length of the furlough period and the particular circumstances of the furlough. For example, PTAFW will not accrue during the furlough period and the Company's contribution to insurance premiums may cease. If on furlough status, the employee must submit the Company I.D., airport I.D., General Operations Manual (if applicable), station keys, sine-in codes, and any other Company property to his or her manager or supervisor.

**DATE OF HIRE**

If an employee leaves the Company for a period of more than 90 days for reasons other than Leave Of Absence or Furlough, he or she will receive a new date of hire upon return to employment with the Company.

H509

# EXHIBIT C

LAW OFFICES

## TEKER TORRES & TEKER, P.C.

Lawrence J. Teker
Phillip Torres
Samuel S. Teker
Joseph C. Razzano

Suite 2A, 130 Aspinall Avenue
Hagåtña, Guam 96910-5018
Telephone: (671) 477-9891/4
Facsimile: (671) 472-2601
Email: ptorres@tttguamlawyers.com

Of Counsel:
Nagatomo Yamaoka

June 15, 2007

## VIA FACSIMILE NO.: 477-4375

David Ledger, Esq.
**Carlsmith Ball, LLP**
Bank of Hawaii Building, Suite 401
134 W. Soledad Avenue
Hagåtña, Guam 96910

> *Re:* *Tiffany Anne Nicholson v. Hyannis Air Service, Inc. dba Cape Air.*
> District Court of Guam Civil Case No. 06-00027

Dear David:

Please allow this letter to serve as our formal objection to the taking of the deposition of Russell Price in London. On February 20, 2007, Defendants served their Initial Disclosures identifying Mr. Price as a witness and employee of Cape Air. You indicated that Mr. Price may be contacted through your office. On March 1, 2007 Defendants amended their Initial Disclosures and stated that Mr. Price was a former employee and provided an email address for him. We repeatedly requested Mr. Price's last known address and contact information as we were interested in taking his deposition. The only information ever provided by your office was an email address for Mr. Price. I noticed and renoticed his deposition so your office knew of our intention to take his deposition as part of the trip to Hyannis, Massachusetts.

As you know, great expense was incurred on both our parts to take the depositions of the employees of Cape Air at or near their principal place of business. Prior to taking the depositions, we went to great lengths to meet and confer with your office when scheduling these depositions. During the deposition of Linda Markham I was surprised to discover that Mr. Price is indeed still an employee of Cape Air who is on a leave of absence. In route to Guam, I received an email from you informing me of your intentions to depose Mr. Price in London. I object to the deposition of Mr. Price being taken in London as he is an employee of Cape Air and, therefore, your client had a duty to produce him for a deposition in Hyannis as we repeatedly requested.

I relied on your office's representation that Mr. Price was no longer an employee, a fact that

David Ledger, Esq.
June 15, 2007
Page 2

could have easily been verified by a simple telephone call to your client. Instead you expect Ms. Nicholson to incur an additional expense of traveling to London to take this deposition which is unreasonable. I further object to this deposition as you have failed to comply with Federal Rule of Civil Procedure 28 (b). I am not objecting to having Mr. Price deposed but I am requesting that you withdraw your deposition notice of Mr. Price's deposition in London and produce him for deposition at a mutually convenient time in Guam.

I look forward to discussing this matter with you.

Very truly yours,

Phillip Torres

# EXHIBIT D

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE 671.472.6813 FAX 671.477.4375
WWW.CARLSMITH.COM

DIRECT DIAL NO.                     DLEDGER@CARLSMITH.COM                     OUR REFERENCE NO.:
X302                                                                          056785-00005

June 18, 2007

**VIA FACSIMILE (671) 472-2601**

Phillip Torres, Esq.
**TEKER TORRES & TEKER, P.C.**
Suite 2A, 130 Aspinall Avenue
Hagåtña, Guam USA 96910

> Re:  Tiffany Anne Nicholson vs. Hyannis Air Services, Inc. dba Cape Air
>      District Court of Guam Civil Case No. CIV06-00027

Dear Phil:

Contrary to your assertion and letter dated June 15, 2007, Defendant's Notice of Deposition for Russell Price complies with Fed. Rule. Civ. P 28(b) subpart (3), as well as the rules cited in the Notice of Deposition.

Mr. Price is currently employed by another air carrier and is flying for that carrier while based and residing in Ireland. As you note in your letter dated June 15, 2007, Defendant amended its disclosures to reflect Mr. Price's change in employment status. That Mr. Price apparently did not respond to emails you may have sent to the e-mail address we provided was Mr. Price's choice. He informed us that his preference was to not speak with you unless we were present during the taking of his statement or a deposition. Mr. Price is free to make this choice and is under no obligation to speak with you informally.

Mr. Price was employed by another air carrier based in Ireland and was living in Ireland during the time you recently took depositions in Hyannis. Should Mr. Price's employment with that air carrier terminate, his status with Cape Air is that he would be eligible for re-employment with no loss of seniority regarding flight status. At present Mr. Price has no plans to terminate his employment and seek re-employment at Cape Air. It is not of our making that

the label "leave of absence" has been used to describe Mr. Price's current status. Not that the label makes any difference to the present situation. In any case, at present neither we nor Cape Air have "control" over Mr. Price sufficient to compel him to travel from Ireland to Hyannis or Guam for a deposition, nor is Cape Air required to pay for that. Even if Mr. Price had somehow *been actively employed* by Cape Air (while flying for another air carrier) at the time of the Hyannis depositions, Cape Air would not have been obligated to produce Mr. Price in Hyannis or Guam by flying him from Ireland to Hyannis or Guam. Rather, if Mr. Price had been actively employed by Cape Air at the time you took depositions in Hyannis, Cape Air's obligation would have consisted of assisting you with arrangements to take Mr. Prices' deposition at his location and residence, which is precisely what is happening now, notwithstanding no obligation to do so.[1]

Mr. Price has agreed to travel from Ireland to London for his deposition which will proceed as scheduled on August 7th, 2007 before a person authorized to administer the oath (see Rule 28(b) subpart (3). We have previously provided you with Notice and invited you to cross examine in person or by telephone. Should you decide to take a discovery deposition prior to our deposition to preserve testimony for trial, you are welcome to do so and arrangements will be made by me, though the court reporting fees for discovery portion of his testimony will be for your account. Since I have the deposition room booked for the day for my trial deposition, your client will not be asked to share that cost.

Given Mr. Price's current employment in Ireland the likelihood is high that Mr. Price will not be available in Guam at the time of trial. Thus his anticipated trial testimony will be preserved on video tape for showing at trial. It is understandable that you would not want Mr. Price to testify at trial by way of video deposition (or at all) as his testimony will greatly contradict many of your client's key allegations and undermine your client's chance of success at trial. We are confident the court is not going to permit this case to be decided by a jury which has been deprived of hearing testimony from one the most important witnesses, if not the most important witness. Furthermore, we are confident the Court would support our efforts to obtain and preserve the testimony of a key witness now, so as to avoid last-minute motions to continue the trial due to witness unavailability or other like scrambling around to obtain the testimony for trial.

As for your complaints over the expense your client is incurring to prosecute the case, it is largely if not entirely of her own making. Your client knew as well, if not better, than anyone when *she decided to sue in Guam* that the vast majority of witnesses, obviously those located in Hyannis, *were not in Guam.* Your client knew that many important witnesses had left employment with Cape Air in Guam and were elsewhere. Nonetheless, instead of suing Cape Air at Hyannis where its principal place of business is located and where all the Cape Air employees recently deposed are located, (except for the pilots deposed in Florida) for some reason she chose to sue in Guam. The costs your client incurs as a result of her choice of Guam

---

[1] Cape Air notes its courtesy and cooperation in assisting with arrangements for your recently completed depositions of Cape Air pilots in Fort Lauderdale, Fla., notwithstanding one being based in Naples, Fla. and the other in San Juan, Puerto Rico.

as the forum are of her own making, not Cape Air or its defense counsel's.[2] In essence, at the time your client elected to sue Cape Air in Guam instead of Hyannis, Guam's relationship to the case was and apparently remains limited to one witness.

We have given you proper Notice of the deposition of Mr. Price and more than ample time to make arrangements to attend in person or on the phone. We have offered to allow you sufficient time to take a discovery deposition from Mr. Price before we commence our trial preservation deposition, again either in person or on the telephone. Our offer to make these arrangements and produce Mr. Price for a discovery deposition are within the discovery cutoff. What you are suggesting is that no discovery or trial deposition be taken from a key witness not likely to be available for trial, yet you have absolutely no legal grounds for your position, instead citing costs of your client's own making.

Best regards,

David Ledger

DPL/june
4842-6684-5697.1.056785-00005

---

[2] To the contrary, Cape Air has facilitated depositions of its pilots, see f.n. 1.

# EXHIBIT E

## June M.C. Borja

**From:** David P. Ledger
**Sent:** Wednesday, July 04, 2007 7:21 PM
**To:** Phil Torres; Elyze J. McDonald
**Cc:** June M.C. Borja
**Subject:** RE: motion

Phil: It is your "objection" to a well-noticed deposition yet you have made no real effort to make arrangements to meet with me. Instead you send email stating how you "disagree" with our information that Mr. Price is not employed by Cape Air, "disagree" that we are entitled to depose for trial a witness residing outside the forum, and inviting me to call and discuss the matter. I called. Yet there is no substance to your "disagreements" other than to repeat how the label "leave of absence" is somehow the equivalent of employment such that Cape Air must "produce" Mr. Price under circumstances convenient to you. Even if he were so employed that would still not be true. To satisfy the little curiosity I had on the subject I asked Mr. O'Connor for details of Mr. Prices' separation from the company and that information was provided to me. I am unimpressed with your contention that Linda Markham's use of the term "leave of absence" is contrary. In fact, Mr. O'Connor told you he was not familiar with the company leave of absence policy. If you had instead asked him about Mr. Price's separation from the company he would have related to you the same details he has stated to me.

Then you sent a "formal written objection" to the deposition citing only a single provision of Rule 28 which, notwithstanding having little or no application to the current situation, will be fully complied with. You have cited no persuasive authority for the proposition that I am not permitted to take a trial preservation deposition from a willing witness with key evidence to give who resides outside the forum. Such depositions, especially in Guam court cases, are ROUTINE and specifically provided for in District Court Local Rules, which have been complied with. In fact, previously you and I have taken and videotaped just such a deposition of a Coastguardsman (and former employee of my client) who was residing in Seattle at the time his testimony could be obtained for trial. I guess the difference in that situation was that you too wanted his testimony for trial.

It has been many weeks since I first informed you of the deposition by email (even before you returned to Guam from the other depositions), and likewise weeks since we filed our Notice. At present I am on vacation in the US and not available for a meet and confer phone call. I will return to Guam in about 10 days.

Final arrangements are made with Mr. Price to utilize two of his off duty days for the deposition on August 7, 2007. Likewise, we have formal arrangements with the court reporter and videographer both of whom are fully licensed in the UK to perform such services. These arrangements are a rare combination of Mr. Price having off-duty days to coincide with my availability to take his testimony and the court reporters being available. We have eased the burden and reduced costs by arranging the deposition in London instead of Ireland. You are invited to attend and cross examine at the place and time specified in our Notice, or attend by telephone.

Best regards,

David Ledger
Carlsmith ball LLP

**From:** Phil Torres [mailto:ptorres@tttguamlawyers.com]

**Sent:** Wed 7/4/2007 9:56 AM
**To:** David P. Ledger; Elyze J. McDonald
**Subject:** RE: motion

David: I have asked you many times in letters and emails to talk to me. Your call yesterday was apparently your first attempt to do so. I disagree with some of your representations below. I am in the office now and can take your call or Elyze's call to discuss these matters or arrange to meet and confer. I welcome your call. Phil

At 04:30 PM 7/3/2007 +1000, David P. Ledger wrote:

> Phil: We will object to the court even hearing any motion not in compliance with all rules, including a meet and confer if applicable. I called you last evening but you had left the office at 445 pm.
>
> Once we see a motion in compliance with all applicable procedural rules, we expect to issue a Rule 11 withdraw request as we see and you have not advised us of any basis for any such motion other than you simply not wanting Mr. Price to testify at trial. This is of course understandable given what Mr. Price will say yet hardly a basis to avoid a deposition.
>
> Mr. Price is not an employee of Cape Air regardless of the label you choose to describe his current status. Mr. Price's employment with Cape Air terminated on proper paper work, something you would have learned if you had asked David O'Connor the right questions. Mr. Price has the option to seek re-employment within one year of his separation with no loss of pilot seniority.
>
> We have every right to preserve Mr. Price's testimony for trial and have complied with all applicable procedures for doing so. Please be advised that should you persist in your efforts to prevent Mr. Price from testifying for trial, we will avail of every opportunity to seek sanctions against you and your client for our clients expenses incurred in opposing your unsupportable opposition to the Notice of Deposition for Mr. Price.
>
> David Ledger
> Carlsmith Ball LLP
>
> **From:** Elyze J. McDonald
> **Sent:** Tue 7/3/2007 2:01 PM
> **To:** 'Phil Torres'
> **Subject:** motion
>
> Phil,
> I'm in a depo today and can't get back to you on your request for a hearing date. I'm surprised you are filing a motion which is not compliant with the local rules that require a stipulation between the parties outlining both parties' contentions in a discovery dispute I can't recall the exact local rule at this time. I haven't been contacted about formulating a stipulation.
> We will agree to a hearing date at the end of this month, but will have to get back to you on an exact date. Which dates did you have in mind?
> Elyze

# EXHIBIT F

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
Hyannis Air Service, Inc. dba Cape Air



**FILED**
DISTRICT COURT OF GUAM

JUN _ 7 2007

MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| TIFFANY ANNE NICHOLSON, | CIVIL CASE NO. CV06-00027 |
| Plaintiff, | |
| vs. | **NOTICE OF DEPOSITION;** <br> **DECLARATION OF SERVICE** |
| HYANNIS AIR SERVICE, INC. <br> dba CAPE AIR, | |
| Defendant. | |

TO: **TIFFANY ANNE NICHOLSON**
**c/o Phillip Torres, Esq.**
**Teker Torres and Teker, P.C.**
**130 Aspinall Avenue**
**Suite 2A**
**Hagåtña, Guam 96910**

**RECEIVED**

JUN 0 7 2007
By: D.C. Time: 11:20 am

**Teker Torres & Teker, P.C.**

**PLEASE TAKE NOTICE** that Defendant Hyannis Air Service, Inc. dba Cape Air in the

above-entitled action, will take the deposition of **Mr. RUSSELL PRICE** at Anglo-American

Court Reporters, Ltd., 150 Minories, London EC3N 1LS on **Tuesday, August 7, 2007, at 10:00**

o'clock a.m..

The deposition will be *video taped and recorded stenographically* pursuant to the Federal Rules of Civil Procedure and L.R. 30.1. Notice of video taping and transcription is hereby given in accordance with L.R. 30.1(c)(1)(A), (B) and (C).

The purpose of the deposition is to take the testimony of Mr. Russell Price to be presented during the trial under L.R. 32.1, in lieu of his personal appearance in court.

You are invited to attend the deposition either in person, or over the telephone at 44-207-264-2088, to cross examine.

It is estimated that said deposition shall require four (4) hours of testimony.

DATED: Hagåtña, Guam, June 7, 2007.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Defendant
Hyannis Air Service, Inc. dba Cape Air

# DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States,

that on the 7th day of June 2007, I will cause to be served, via hand delivery, a true and correct

copy of the **NOTICE OF DEPOSITION; DECLARATION OF SERVICE** upon Plaintiff's

Counsel of record as follows:

> Phillip Torres, Esq.
> Teker Torres and Teker, P.C.
> 130 Aspinall Avenue
> Suite 2A
> Hagåtña, Guam 96910

Executed this 7th day of June 2007 at Hagåtña, Guam.

_____
DAVID LEDGER

# DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on the 24th day of July 2007, I will cause to be served, via hand delivery, a true and correct copy of the MEMORANDUM IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER; DECLARATION OF LINDA MARKHAM; DECLARATION OF DAVID LEDGER; EXHIBITS A-F; DECLARATION OF SERVICE upon Plaintiff's Counsel of record as follows:

> Phillip Torres, Esq.
> Teker Torres and Teker, P.C.
> 130 Aspinall Avenue
> Suite 2A
> Hagåtña, Guam 96910

DATED: Hagåtña, Guam, July 24, 2007.

DAVID LEDGER