IN THE DISTRICT COURT OF GUAM

TIFFANY ANNE NICHOLSON,  ) CIVIL CASE NO. CV06-00027
         )
     Plaintiff, )
         )
   vs.     )
         )
HYANNIS AIR SERVICE, INC.  )
dba CAPE AIR,      )
         )
     Defendant. )
         )

DEPOSITION TRANSCRIPT

OF

# TIFFANY ANNE NICHOLSON

March 1, 2007

ORIGINAL

PREPARED BY:  GEORGE B. CASTRO
       **DEPO RESOURCES**
       #49 Anacoco Lane
       Nimitz Hill Estates
       Piti, Guam 96915
       Tel:(671)688-**DEPO** * Fax:(671)472-3094

1      Q   Okay.   Being difficult to get along
2 with, does that affect communication though?

3      A   In a CRM environment?   No, it should
4 not.

5      Q   Why do you say that?

6      A   Your interpersonal relationship with
7 someone that is not the same as your crew
8 resource management.

9      Q   Okay. So, when you're saying difficult
10 to get along with, is that on a personal basis?

11      A   It can be personal or business.

12      Q   Business, okay. So, if it's in a
13 business relationship and you're difficult to
14 get along, does that affect your CRM skills?

15      A   No. It should not, no.

16      Q   You say, "My CRM skills are not at the
17 level of my co-workers". Who are you referring
18 to?

19      A   The other pilots that I flew with.

20      Q   Which pilots had a higher CRM level
21 than you did?

22      A   I don't believe any of them did.

23      Q   Okay. So, when you wrote this you
24 didn't believe that to be true, that your CRM
25 skills were not at the level of your co-

1 looking at page 72, the second page of this
2 email, second paragraph, "I am willing to go to
3 CRM training at Flight Safety to participate in
4 any CRM workshops available and to see the
5 woman recommended by EAP on Guam for as long as
6 the company feel necessary". Were you willing
7 to do all those things?

8     A    Yes, I was.

9     Q    Okay. And did you believe that these
10 things would help with your CRM skills?

11     A    Any training will improve upon an
12 ability that you have.

13     Q    Okay. (To court reporter) Have we
14 marked this yet? Can you mark this as Exhibit
15 4?

16     (Defendant's Exhibit 4 was marked for
17 identification)

18     Q    What happened after you --

19     MR. TORRES: Did we mark 89?

20     MS. McDONALD: Yeah, that was Exhibit
21 3.

22 BY MS. McDONALD:

23     Q    What happened after you sent this
24 email, 71, 72?

25     A    There was a follow up meeting held in

1 — that he did maintain his personal
2 relationship outside, separate from the
3 cockpit. The actions of John Kappayne during
4 the flights that were observed by Russell
5 Price, his attitude towards me, calling me
6 names, yelling at me, putting his finger at my
7 face, creating an unsafe environment. When
8 somebody says "We don't want you here", that
9 would make me believe that they didn't want me
10 here.

11      I believe that I was the only female in
12 an all male situation and that the guys didn't
13 think that they would be able to do what they
14 wanted with a girl hanging around.

15    Q   Did anybody specifically say that they
16 didn't want you around because you were a
17 female?

18    A   Now that would have been illegal,
19 wouldn't it?

20    Q   Did anybody say that?

21    A   It was not stated in those specific
22 terms.

23    Q   So, what conduct or other statements
24 are you referring to that makes you think it
25 was because you are a woman?

1   A   Chuck didn't want to fly with me
2   because I was his ex-girlfriend.

3   Q   Okay.

4   A   John Kappayne's attitude changed
5   towards me after we arrived out here and I was
6   the only female.  Russell Price's statement
7   that he didn't want me here, I was too much of
8   a headache.

9   Q   So you think his statement that you are
10  a headache referenced the fact that you are a
11  woman?

12  A   I think it referenced that and the
13  facts that the other pilots complained to him
14  about me.

15  Q   About what your CRM skills?

16  A   That and more.

17  Q   Such as?

18  A   I can't state anything specific.  There
19  are just --

20  Q   Can you give me some examples?

21  A   I was told that I did my job better
22  than they did, that I knew the ins and outs of
23  the job better than they did, and they didn't
24  like flying with a girl who did her job better.
25  This is Russell Price's opinion of the other

1  about Chuck White. Actually, I don't think I

2  have any further questions about this document.

3  I think we've gone over most of these

4  statements. Okay.

5       So, you didn't take up Cape Air on its

6  offer to be reinstated as a captain back in

7  Hyannis, is that correct?

8       A    As a captain on the 402, no.

9       Q    On the 402?

10      A    No, I did not.

11      Q    Okay. And you didn't take them up on

12 their offer to -- let me make sure I'm accurate

13 -- to work as a C-402 captain and be

14 reconsidered for the ATR; is that correct, you

15 did not take them up on that offer?

16      A    I did not take them up on the offer of

17 a demotion to a 402 position.

18      Q    Okay. You didn't take them up on the

19 offer basically to keep working on Cape Air?

20      A    That's not a correct statement.

21      Q    And so what's incorrect about it?

22      A    I did not deserve that I felt to be

23 terminated. I did not want to resign. I also

24 feel that I did not deserve to be demoted.

25      Q    You didn't take them up on any further

# REPORTER'S CERTIFICATE

I, **George B. Castro,** Court Reporter, do hereby certify the foregoing 102 pages to be a true and correct transcript of the audio recording made by me in the within-entitled and numbered case at the time and place as set forth herein.

I do hereby certify that prior to examination the deponent was duly sworn upon oath; that thereafter the transcript was prepared by me or under my supervision.

I further certify that I am not a direct relative, employee, attorney or counsel of any of the parties, nor a direct relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

In testimony whereof, I have hereunto set my hand and seal of Court, this 19th day of April, 2007.

_____

George B. Castro

**DEPO RESOURCES**
George B. Castro
**Court Reporter**
Tel.(671)688-**DEPO** * Fax(671)472-3094