TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
FACSIMILE: (671) 472-2601

*Attorneys for Plaintiff*

**FILED**
**DISTRICT COURT OF GUAM**

FEB 0 1 2008

**JEANNE G. QUINATA**
**Clerk of Court**

IN THE DISTRICT COURT OF GUAM

----------

| | |
|---|---|
| TIFFANY ANNE NICHOLSON, | CIVIL CASE NO. CV 06-00027 |
| Plaintiff, | |
| vs. | **DECLARATION OF COUNSEL** |
| HYANNIS AIR SERVICE, INC. d.b.a. CAPE AIR, | |
| Defendant. | |

SAMUEL S. TEKER, hereby declares as follows:

1. I am one of the attorneys of record for Plaintiff in the above entitled action.

2. On January 31, 2008, Plaintiff faxed to my office an executed copy of her Declaration of Facts, a copy of which is attached hereto and incorporated herein by reference.

3. Upon receipt of the original Declaration of Facts, my office will immediately file it with this Court.

I declare under penalty of perjury under that the foregoing is true and correct.

DATED at Hagåtña, Guam, on February 1, 2008.

**SAMUEL S. TEKER**

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
FACSIMILE: (671) 472-2601

Attorneys for Plaintiff
*Tiffany Anne Nicholson*

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| TIFFANY ANNE NICHOLSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HYANNIS AIR SERVICE, INC. ) <br> d.b.a. CAPE AIR, ) <br> ) <br> Defendant. ) | CIVIL CASE NO. CV 06-00027 <br><br><br><br> **DECLARATION OF FACTS** |

**I, TIFFANY ANNE NICHOLSON**, hereby declare as follows:

1. I am over the age of eighteen (18) years and the Plaintiff in the above-captioned case.

2. I am a pilot and have been certified to fly since September 1993.

3. I began my employment with Cape Air in 2000 as a captain flying the Cessna 402 aircraft.

4. Cape Air is a company with more than six hundred (600) employees

5. Cape Air is an employee owned company with thirty percent (30%) of its stock owned by its employees. I am a shareholder of Cape Air.

6. Once on Guam, Cape Air provided cultural sensitivity training but Cape Air never provided training regarding Title VII discrimination or retaliation. Cape Air never reviewed its sexual harassment policy with me during my employment with Cape Air.

1

7. Russell Price was the Regional Administrator for Cape Air operations on Guam when Cape Air began flying commercially on Guam on August 1, 2004.

8. I am one of eight pilots, and the only woman, who were part of the initial team of pilots who flew on Guam when Cape Air began its operations on August 1, 2004.

9. All eight pilots were flying the ATR-42 aircraft, a two-pilot cockpit aircraft, for the first time.

10. All pilots were required to successfully complete ground school, flight simulator training and Initial Operating Experience (IOE) in order to qualify to fly the ATR-42. Failure to successfully complete ground school, simulator or IOE training meant a pilot was disqualified from flying the ATR-42 aircraft.

11. Russell Price and Stephen Phillips also took the training to qualify to fly the ATR-42 aircraft.

12. In 2004, David O'Connor was the Director of Training of Cape Air.

13. In 2004, Larry Gualtieri was the Director of Operations of Cape Air.

14. In 2004, Stephen Phillips was the Chief Pilot on Guam.

15. Stephen Phillips and David O'Connor are pilots and members of Cape Air's management. They were on Guam in July and August 2004 conducting IOE flights to comply with FAA requirements. Cape Air also conducted additional flights to ensure the pilots were capable of carrying out their duties in the operation of the ATR-42.

16. On or about August 22, 2004, I was awarded my ATR flights for the months of September and October and I had a flight schedule for the months of September and October on the ATR-42.

17. Stephen Phillips and David O'Connor completed their tasks and left Guam on or about August 20, 2004. I was not disciplined or found to have deficient skills by either Phillips or O'Connor before they left Guam.

2

Case 1:06-cv-00027   Document 44   Filed 02/01/2008   Page 3 of 7

18. I was involved in a romantic, boyfriend-girlfriend, relationship with Charles White in 2003 which lasted approximately one year and ended prior to our coming to Guam.

19. Prior to moving to Guam and while on Guam, Charles White continued to pursue me with the hopes of rekindling our relationship but I was no longer interested in a romantic relationship with him.

20. During simulator training in Houston, Rumors began to circulate among the male pilots that Russell Price and I were having an affair and the rumors continued on Guam. I was not aware of the rumors at that time. Russell Price was the Regional Manager and married at the time.

21. The rumors were known by management in the home office in Hyannis, Massachusetts, as well as the pilots and employees of Cape Air on Guam.

22. On the morning of August 31, 2004, Charles White was the Captain and I was the First Officer "FO" on a flight from Guam to Saipan. I piloted the plane back to Guam.

23. Upon returning to Guam, I was removed from the aircraft because Charles White, while on Saipan, notified dispatch that I was unsafe to fly. I disagreed with his decision.

24. Prior to August 31, 2004, no one had approached me, either co-employees or management, to inform me of any problems with my skills nor had I been disciplined by Cape Air in any manner prior to August 31, 2004.

25. On or about September 6, 2004, Charles White, Phillip Derry and Jon Bleiman all wrote letters complaining about me. John Kappeyne wrote his letter on September 9, 2004 and David O'Connor wrote his letter on September 14, 2004 also complaining of me. Russell Price wrote an undated letter complaining about me on or about September 6, 2004.

26. Jon Bleiman asserts that his letter was solicited and demanded by Russell Price and was required to be of a derogatory nature towards my skills as a pilot.

3

27. On or about September 9, 2004, I was sent to the company's headquarters in Hyannis, Massachusetts to meet with management personnel.

28. By September 14, 2004, without my input, Cape Air had already decided on my discipline and I was handed an Action Form setting forth Cape Air's proposed discipline to me.

29. I was told to review it during the week and come back on Friday, September 17, 2004 for a hearing and explain why the company should not institute those actions against me.

30. On September 17, 2004, management personnel consisting of Stephen Phillips, Larry Gualtieri and Linda Markham convened as a disciplinary panel as provided for in Cape Air's Employment Handbook.

31. I was not apprized on those specific charges or allegations instead the panel told me that I had inadequate CRM and pilots did not want to fly with me.

32. I was told about the letters written by my co-worker pilots and management yet I was denied the right to review them and respond to them even though I requested the opportunity to do so.

33. Without specific charges to respond to, I maintained my position that I was not guilty of unsafe flying and that my CRM skills were adequate to be a pilot on the ATR-42.

34. Even though I denied all of the charges, the committee issued the Action Form which, among other things, denied me the right to fly the ATR-42 aircraft or to fly on Guam.

35. I understood the impact of the September 17 Action Form in that if I didn't acknowledge the company's concerns, even though I might disagree. I knew I could benefit from additional training and wanted to address Cape Air's concerns and stay in the ATR 42 program.

36. I accepted responsibility and said that I was not asking for any special treatment and want to be treated as other pilots whose skills were found lacking in the earlier stages of the ATR program.

4

37. I explained how other pilots who failed at various stages of the ATR program were given additional training and additional opportunities to succeed and stay in the program and I wanted to be treated the same way.

38. After the Action Form was issued, I wrote an email, on September 19, 2004, to Linda Markham, Larry Gualtieri, Stephen Phillips and Daniel Wolf. In the email, I told them that I wanted to successfully resolve the employment issues relating to my position in the ATR program on Guam.

39. On page two of my September 19, 2004 email, I said,

> I would like the opportunity to show Cape Air that a successful immediate reintegration into the ATR is possible following immediate CRM training, run concurrently with communication skills training, followed by FO IOE in the ATR on Guam...
>
> I am willing to go to CRM training at flight safety, to participate in any CRM workshops available and to see the woman recommended by EAP on Guam for as long as the company feels necessary...
>
> I am only looking for an equal opportunity to be successful in my position as an ATR FO/CA...I sincerely hope you will reconsider the options offered to me on September 17, 2004.

40. On September 24, 2004, I was served a revised Action Form. The revised Action Form was identical to the first Action Form except that I would be allowed to fly the 402s in the Pacific region. My removal from flight status on the ATR-42 would be reviewed in six months instead of eighteen months. My goal to remain in the ATR-42 program was not permitted by Cape Air. I would only be allowed to fly on Guam as a 402 Captain after I had completed my EAP training and CRM training.

41. I appealed the revised Action Form, which was my right, under the Cape Air Handbook. I am entitled to an independent evaluation of the actions taken by the initial panel. However, I did not have an independent evaluation. The evaluators were Daniel Wolf, the CEO of Cape Air, and Linda Markham, the Human Resources Manager of Cape Air. Linda Markham also was part of the initial panel, thus, it was not an independent review.

5

42. The disciplinary review panel did not make a transcript of the proceedings nor was an audio tape of the proceedings made.

43. Daniel Wolf did not talk to Larry Gualtieri or Stephen Phillips about the decisions they made or the factors that went into their decision. Without a record and without discussing the assessments made by Larry Gualtieri and Stephen Phillips, Daniel Wolf did not make an independent assessment.

44. Daniel Wolf saw his role as validating the actions taken by the disciplinary panel notwithstanding that the panel issued two Action Forms in this case.

45. Since I had appealed the September 24, 2004 Action Form and the review of disciplinary action was still under way, in September, I bid for a schedule that my seniority allowed for work during the month of October as an ATR FO or Captain. My bid was rejected.

46. On October 29, 2004, I was terminated.

47. I filed the discrimination claim with the Equal Employment Opportunity Commission alleging that I had been discriminated on the basis of sex and disparate treatment since I was treated differently than other pilots.

48. On or about June 30, 2005, the EEOC issued a letter to sue. I timely filed suit against Cape Air.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated at ANCHORAGE, AK on 30 JANUARY, 2008.

TIFFANY ANNE NICHOLSON

6