CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
Hyannis Air Service, Inc. dba Cape Air



FILED
DISTRICT COURT OF GUAM

FEB 0 8 2008

JEANNE G. QUINATA
Clerk of Court

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| TIFFANY ANNE NICHOLSON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>HYANNIS AIR SERVICE, INC.<br>dba CAPE AIR,<br><br>　　　　Defendant. | CIVIL CASE NO. CIV06-00027<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; DECLARATION OF SERVICE** |



## I. INTRODUCTION

Plaintiff Tiffany Nicholson's Opposition consists of nothing more than conjecture, unfounded assertions, and discussions of inadmissible evidence. The Opposition neither supports her gender discrimination case, nor is it sufficient to defeat Defendant Hyannis Air Service, Inc. dba Cape Air's ("Cape Air") Motion for Summary Judgment. While Rule 56, Title VII, and Title VII caselaw establish a burden-shifting regime for proving discrimination, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Nicholson, understandably, ignores and disregards what is required to prove her case. With respect to her prima facie case, the first phase of the burden-shifting regime, she ignores an admission made during her deposition that she was not qualified to fly the ATR42, she fails to furnish proof that she was similarly situated to any other pilot, and she fails to raise any issue of fact that she was treated less favorably than male pilots. In the final phase of the burden-shifting regime, Nicholson must furnish *specific* and *substantial* evidence that Cape Air's legitimate, nondiscriminatory reason for disciplining her (i.e., her admittedly deficient crew resource management skills) was pretextual. However, Nicholson has no such evidence, let alone specific and substantial evidence, that Cape Air's well-founded, indeed undisputed, reasons for disciplining her were anything but true.

For these reasons, and those stated here and in the Motion, Cape Air asks the Court for an Order granting summary judgment in its favor.

## II. NICHOLSON'S BURDEN IN SUMMARY JUDGMENT PROCEEDINGS

Nicholson's burden on summary judgment is to set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "[W]hen the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment for the defendant is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In addition, it is well-established that a party opposing summary judgment cannot sit back and wait for the moving party to negate claims or defenses raised by the opposing party. Rather, to avoid summary judgment, the opposing party must demonstrate a genuine issue of material fact on all matters as to which it has the burden of proof. *Id.* at 324; *Lake Nacimiento Ranch Co. v. San Luis Obispo*, 841 F.2d 872, 876 (9th Cir. 1987). "Mere allegations or denials" do not meet the opposing party's burden of showing a genuine issue of material fact. *Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994).

Indeed, Rule 56 explicitly requires that any factual support to an opposition to a motion for summary judgment be made with *personal knowledge.* "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Contrary to this concise mandate, **Nicholson's so-called Declaration of Facts (attached to a Declaration of Counsel) is not made on personal knowledge.** Rather, all "facts" listed therein have been submitted inappropriately and should be disregarded by the Court.

### III. NICHOLSON DOES NOT SATISFY HER PRIMA FACIE CASE

#### A. NICHOLSON ADMITS THAT SHE WAS NEITHER QUALIFIED NOR MEETING CAPE AIR'S LEGITIMATE EXPECTATIONS.

Under this prong of the prima facie case, Nicholson must show that she was qualified for her job, or in other words, that she was "performing according to her employer's legitimate expectations." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). Cape Air's expectation was that Nicholson perform adequate CRM, that she conduct herself in conformance with the General Operating Manual's ("GOM") standards for First Officers, and that her interactions with her co-workers promoted safe flying. Mot., Exs. A, P at 135:5-13. As noted in the Motion, Nicholson *admitted* that she

failed to comply with proper procedure by not coordinating her effort with her captain, plainly a violation of the GOM's requirements that she aid the captain in the safe and efficient conduct of the flight, prepare all required forms, and maintain a high degree of crew coordination and cockpit discipline. Mot., Ex. A at H539, Ex. K at 154:8-11, 155:25 - 156:17. Nicholson also admits in a letter to Cape Air that her CRM skills are lacking, and that further CRM skills training would address her "problems." Mot., Ex. J. These telling admissions remain unaddressed by Nicholson.[1] It is therefore admitted and undisputed that Nicholson was not meeting Cape Air's legitimate expectations.[2]

### B. IT REMAINS UNDISPUTED THAT NICHOLSON IS NOT SIMILARLY SITUATED WITH ANY OTHER PILOT.

A second requirement of Nicholson's prima facie case is the showing that other employees were similarly situated with Nicholson. In its motion, Cape Air presented evidence that no other pilot experienced CRM problems warranting corrective measures, and therefore was not similarly situated to Nicholson. **This evidence likewise remains undisputed.** Rather than raise any genuine issue of material fact, Nicholson disingenuously dismisses Cape Air's proffered evidence by saying the distinction between Nicholson's CRM deficiencies and other pilots' technical piloting skills challenges is a "distinction without a difference." Unfortunately for Nicholson, the commercial air transport industry, the FAA, and Cape Air personnel responsible for keeping the airplanes in the air know and contend otherwise: flight crews with poor CRM do crash airplanes and kill passengers.

---

[1] Nicholson argues that no one told her she was having CRM deficiencies, however, that claim is contrasted by her own testimony that she knew she was being observed. Mot., Ex. K at 181:16, 21-24. Nicholson also argues that no one determined that she was not qualified to fly, but that bare assertion falls to the wayside in light of the evidence furnished by Cape Air that Nicholson's managers, supervisors, and captains pointed to numerous instances in which she displayed inadequate CRM skills.

[2] Nicholson misleads the Court that Cape Air's then-Director of Training David O'Connor supported her work. O'Connor, in a letter, states that "I think she possesses the ability and desire to [do] the job safely and well, **but she would have to commit to a serious personality adjustment in order to do so.**" Mot., Ex. E at 2 (emphasis added). Nicholson's Opposition quotes only the first half of O'Connor's sentence.

Furthermore, in the context of summary judgment, the distinction is plainly fundamental as demonstrating that Nicholson was similarly situated with any other pilot is <u>an element of her prima facie case</u>. In the Ninth Circuit, a plaintiff opposing a motion for summary judgment <u>must show that she was similarly situated to other employees "in all material respects."</u> *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (citing with approval the "all material respects" standard of the Sixth Circuit); *Vasques v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004). In *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000), the court clarified the "all material respects standard" as meaning that "similarly situated employees who went undisciplined engaged in comparable conduct." The "standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases...." *Id.* The court undertook this analysis in *Vasques*, in which it granted summary judgment after finding that the plaintiff was not similarly situated to one employee because the compared employees were not involved the same type of offense, and not similarly situated to another employee whose problematic conduct was not of comparable seriousness. 349 F.3d at 641.

Here Nicholson was tasked to furnish undisputed evidence that male pilots engaged in comparable conduct, specifically, deficient and unsafe CRM skills, and then were subjected to a different form of discipline. Here, Nicholson offers **no** evidence, admissible or otherwise, that any other pilot was similarly situated to her in that they also lacked the minimum required CRM skill. Rather, the undisputed evidence remains that *not one of the seven remaining pilots failed at CRM.* Moreover, Nicholson was in a category by herself when she squandered a second round of training, which was provided to her through Price's four-day training program in September 2004. Nicholson understandably ignores and fails to address the evidence that other pilots who required training for deficiencies of different and technical piloting skills, which require a

different form of remedial training, did not squander a second round of training and required a third round, which was the case with Nicholson. As no other pilot had CRM deficiencies, or needed a *third round* of training, there is no one to compare Nicholson with.

Absent any evidence of an employee with comparable misconduct, Nicholson has failed to raise a genuine issue of material fact, specifically, that another pilot was similarly situated to her in "all material respects."

### C. NICHOLSON WAS NOT TREATED DIFFERENTLY FROM OTHER PILOTS.

Nicholson completely ignores all presented and undisputed evidence that she was afforded a second round of training, the same "second round of training" provided to other pilots who encountered difficulty with their technical piloting skills. Instead, Nicholson dwells on her assertion that Cape Air denied her a *third* round of training while keeping her as an ATR42 pilot. Again, however, Nicholson was the only one of seven pilots who required a *third round* of training, and therefore, Nicholson was not treated differently from anyone as all other pilots maximized their second round opportunity to success. Moreover, during her second round of training Nicholson remained an ATR42 pilot, which is the same treatment afforded to other pilots. In sum, Nicholson was not treated differently from any other pilot.[3]

### IV. CAPE AIR ARTICULATED LEGITIMATE NONDISCRIMINATORY REASONS FOR NICHOLSON'S DISCIPLINE.

At the second stage of the *McDonnell Douglas* test, the employer must set forth admissible evidence (e.g., testimony by supervisors or decision-makers) showing legitimate, nondiscriminatory reasons for the actions taken against the employee. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). In its Motion, Cape Air furnished numerous pieces of admissible evidence showing such reasons. The depositions of Steve Phillips, David

---

[3] References to Nicholson having gone through a formal disciplinary process while others were not is not sustained by any admissible evidence, and should be disregarded by the Court.

O'Connor, and Price each mentioned personal experiences flying with Nicholson and observing her inadequate and unsafe CRM skills. Mot., Exs. P, O, R. Cape Air's Revised Action Form, authenticated through a declaration of Linda Markham, Cape Air's Vice President of Human Resources, lists Nicholson's deficiencies, which encompassed her inability to interact and communicate effectively in a flight crew environment, her inability to assist the captain in the most efficient manner possible to ensure the highest level of safety as required by Cape Air's General Operating Manual, and her uncooperative attitude and inconsistent CRM skills creating unsafe operating conditions in the cockpit. Mot., Ex. G. Cape Air also produced a letter from Nicholson herself in which she admits to having deficient CRM and needing training to improve those skills. Mot., Exs. I, J. When Cape Air offered her that training earlier, Nicholson either slept through it or otherwise wasted the training opportunity. In the circumstances, Cape Air has amply satisfied its burden of production of a legitimate, nondiscriminatory reason for disciplining Nicholson.[4] Aside from the context of Title VII and summary judgment, when lives and millions of dollars are at stake, common sense and good judgment dictate that unsafe pilots be dealt with in a manner which, if it errs, it does so on the side of caution.

## V. NICHOLSON FAILED TO PROVIDE SPECIFIC AND SUBSTANTIAL EVIDENCE DEMONSTRATING THAT CAPE AIR'S LEGITIMATE NONDISCRIMINATORY REASONS WERE PRETEXTUAL.

Nicholson has the burden of demonstrating that Cape Air's legitimate nondiscriminatory reason is a pretext for discrimination, or that it that its proffered explanation is unworthy of credence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000). As noted in the Motion, in order to defeat Cape Air's Motion for Summary Judgment, Nicholson must

---

[4] Indeed, Nicholson does not dispute that Cape Air has met its burden of production: "at first glance it may appear that Cape Air found Nicholson to be deficient in her CRM skills and honestly believed in the reasons it offered for Nicholson's discipline…" Opp. at 8. Cape Air needed only to articulate that legitimate nondiscriminatory reason "at first glance" in order to satisfy its burden of production under *McDonnell Douglas*.

provide *specific* and *substantial* evidence challenging the credibility of Cape Air's motives for disciplining her. 349 F.3d at 642; *see also* 150 F.3d at 1222 ("evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex"). This is the standard applied when the claimed evidence of discrimination is circumstantial, rather than direct.[5] "Direct" evidence of discrimination consists of clearly sexist statements or actions by the employer. 150 F.3d at 1221. Although Nicholson states that there is direct evidence of discrimination, however, she points to no directly sexist statement or action, and further, states in her deposition that no one at Cape Air ever said she was disciplined because she was a woman. Mot., Ex. N at 46:15-22.

All of Nicholson's suggestions of pretext, both individually and collectively, fails to meet the "specific and substantial" standard. Nicholson first mentions that she was the only female pilot flying the Micronesia route. Plainly this is not evidence of discrimination or proof that Cape Air's legitimate business purpose for disciplining her was discriminatory. It is undisputed that the Cape Air Micronesia route pilots were selected based on seniority, a system implemented throughout the airline industry, as recognized by Nicholson. Mot., Ex. K at 78:11-14. Other than mentioning that she was the only female on the Micronesia route, Nicholson makes no connection between her being the sole female or the use of seniority bidding and any discriminatory action committed by Cape Air. Indeed, her being a female is the first element of her prima facie case, and that alone, does not satisfy a showing of pretext. *See* 150 F.3d at 1220 (plaintiff at pretext stage must produce evidence *in addition to* that which was sufficient for her prima facie case in order to rebut the defendant's showing of a legitimate business purpose).

---

[5] See also *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095-96 (9th Cir. 2005) for a further discussion on the distinction between direct and circumstantial evidence.

Second, Nicholson mentions that Chuck White did not want to work with her. However, Nicholson does not put forward any undisputed evidence showing that his hesitancy to work with her was motivated by her gender. Instead, as White testified, it was based on their previous relationship and her unsafe cockpit behavior. As White's motivations have nothing to do with the fact that Nicholson is a woman, it is not specific or substantial evidence of discrimination. Nicholson also fails to demonstrate a connection between White's hesitancy to work with Nicholson and the credibility of the disciplinary panel's decision. In fact, there is no evidence that she raised the issue of her past relationship with White to the panel's attention, prior to her discipline, as a reason why White removed her from the flight.

Third, Nicholson oddly claims Cape Air's legitimate nondiscriminatory reason is rendered pretextual due to rumors of a sexual relationship between her and Price. However, a statement that an employee is having a consensual relationship with a co-worker cannot be construed as discrimination on the basis of sex absent an additional showing, such as that the plaintiff was singled out for such comments because of her gender. *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir. 1996) (rejecting rumors as evidence of a hostile work environment claim because the defendant failed to show that the employees who spread rumors did so because of the plaintiff's gender) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.10 (1976)). Here, Nicholson has failed to argue or provide evidence that the rumors, even if they existed, were created because of her gender. Accordingly, even the rumors fail to meet the standard of specific and substantial evidence of pretext.

Fourth, the fact that pilots wrote negative reports about Nicholson around the same time does not constitute specific or substantial evidence that Cape Air's legitimate business reason is pretextual. Nicholson asserts that the dates of the letters "suggests" they were solicited or

planned, but offers no evidence of any such solicitation or planning other than her suggestion. This is not specific or substantial evidence of pretext.

Fifth and finally, Nicholson unabashedly contends Cape Air failed to reasonably investigate the allegations against her, confront her with the allegations and give her an opportunity to defend herself, make a record of the hearing, or conduct an independent review. In light of the entire undisputed record of the manner in which Cape Air properly addressed Nicholson's inability to fly safe, and her admission that in one instance she was deficient at CRM, the kindest way to respond is to say this contention lacks any admissible evidence. As noted in the beginning of this Reply, in summary judgment proceedings, the nonmovant cannot rest on the allegations in her complaint, she must provide admissible evidence showing a genuine issue for trial.

Turning to the so-called "procedural irregularities" during the grievance procedure, Nicholson has not provided the Court with any admissible evidence showing what the Employee Handbook contains and what was "irregular" about the procedure afforded to Nicholson. Instead, she rests on unsupported assertions that a transcript was not made of the hearing, that the panel failed to talk to pilots, and that she did not receive an independent review. Where is the admissible evidence to sustain these allegations and to support her claim that any deviation in the disciplinary process was discriminatory? Simply put, Nicholson has failed to provide any such evidence, signifying that once again, she has failed to meet her burden of furnishing specific and substantial evidence of pretext.

In sum, Nicholson has not come up with a single shred of specific evidence demonstrating that Cape Air's nondiscriminatory reason is pretextual. Cumulatively, she has likewise failed to provide any substantial evidence of pretext either.

As a final note, in the preceding discussion, points one, three, four, and five in support of Nicholson's arguments regarding pretext as stated in her Opposition were *never* mentioned by Nicholson during her deposition when she was asked to state the reasons why she believed she was being discriminated against on the basis of her gender. Of the five grounds asserted here, Nicholson raised only the issue of being White's ex-girlfriend as a basis for discrimination. Mot. Ex. N at 46:15 – 47:8. Nicholson never supplemented her deposition testimony with any further discovery responses, only now in the face of summary judgment revealing these self-serving "justifications." "[W[here specific, gender-based complaints are vital to [the plaintiff's] claim and where she made no mention of the statement in her deposition, it is reasonable to exclude it." *Gates v. Caterpillar, Inc.*, 2008 WL 141814, *5 n.5 (7th Cir. Jan. 16, 2008). Cape Air asks the Court to exclude all such untimely and unfounded self-serving pieces "evidence" of pretext.

## VI. CONCLUSION

Cape Air has met its burden of producing a legitimate nondiscriminatory reason for disciplining Nicholson. She was hostile, arrogant, disruptive, insubordinate, and a poor communicator. Most important of all, she was unsafe and as such a threat to the lives of passengers who entrusted their lives to the airline and its flight crews. Price, Cape Air's then-Pacific Regional Administrator and an experienced pilot, testified that in his entire career as a commercial airline pilot, his Guam-Saipan flight with Nicholson was the scariest he had ever had.

In opposition to this compelling evidence, Nicholson fails to furnish any issue of fact showing that she was qualified for her job or met Cape Air's reasonable expectations, that other pilots were similarly situated with her but were treated more favorably, or that Cape Air's legitimate nondiscriminatory reason is a sham.

For these reasons, summary judgment is appropriate in favor of Cape Air.

DATED: Hagåtña, Guam, February 8, 2008.

CARLSMITH BALL LLP

_____
ELYZE J. MCDONALD
DAVID LEDGER
Attorneys for Defendant
Hyannis Air Service, Inc. dba Cape Air

# DECLARATION OF SERVICE

I, Elyze J. McDonald, hereby declare under penalty of perjury of the laws of the United States, that on the 8th of February, 2008, I will cause to be served, via hand delivery, a true and correct copy of the DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; DECLARATION OF SERVICE upon Plaintiff's Counsel of record as follows:

**Phillip Torres, Esq.**
**TEKER TORRES AND TEKER, P.C.**
**130 Aspinall Avenue, Suite 2A**
**Hagåtña, Guam 96910**

**Attorneys for Plaintiff Tiffany Anne Nicholson**

DATED: Hagåtña, Guam, February 8, 2008.

_____
ELYZE J. MCDONALD